UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ESTHER MARIE H.,

Plaintiff,

v. 5:20-CV-00668 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

OLINSKY LAW GROUP
*Counsel for Plaintiff*
250 South Clinton Street
Suite 250
Syracuse, New York 13202

HOWARD D. OLINSKY, ESQ.
EDWARD A. WICKLUND, ESQ.

U.S. SOCIAL SECURITY ADMIN.
*Counsel for Defendant*
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MOLLY CARTER, ESQ.

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**DECISION AND ORDER**

Currently before the Court, in this Social Security action filed by Esther Marie H. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner"), pursuant to 42 U.S.C. § 405(g), are the parties' briefs, filed in accordance with N.D.N.Y. General Order 18. (Dkt. Nos. 14, 20.) Upon full review of the record and the arguments of the parties, the Court finds no basis for remand. Therefore, the Commissioner's decision is affirmed and Plaintiff's complaint is dismissed.

# I. BACKGROUND

## A. Factual Background

Plaintiff was born on September 20, 1976, and was 40 years old at the alleged onset date. (Administrative Transcript at 19.[1]) Plaintiff alleges disability due to back pain, leg pain, carpal tunnel syndrome ("CTS"), and acid reflux." (T. at 170.) Plaintiff has an associate degree in medical assisting. (T. at 39.) She previously worked for a home healthcare agency and as a secretary. (T. at 178.)

## B. Procedural History

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on June 6, 2017, alleging disability beginning December 1, 2016. (T. at 13, 141.) Plaintiff's applications were initially denied on August 9, 2017, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 13.) She appeared and testified before ALJ Jeremy G. Eldred on March 11, 2019. (T. at 33.) On March 26, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. at 13-20.) On April 13, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. at 1-3.)

## C. The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law. (T. at 13-20.) Plaintiff met the insured status requirements through June 30, 2019. (T. at 15.) Plaintiff had not engaged in substantial gainful activity since December 1, 2016, the alleged onset date of

---

[1] The Administrative Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

disability. *Id*. Plaintiff has two severe impairments: degenerative changes of the lumbar spine and obesity. *Id*. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. (T. at 16.) She has the residual functional capacity ("RFC") to perform the full range of sedentary work. *Id*. Plaintiff is unable to perform any past relevant work, but she can perform other jobs existing in significant numbers in the national economy. (T. at 18-19.) The ALJ therefore concluded Plaintiff is not disabled. *Id*.

### D. The Parties' Contentions

Plaintiff argues the RFC determination is not supported by substantial evidence because the ALJ "erred in discounting the opinion from [Plaintiff's] treating physician Dr. Eppolito in favor of the vague and uninformed opinion from one-time consultative examiner Dr. Ganesh." (Dkt. No. 14.) Plaintiff also claims "[t]he ALJ had no basis for [the] RFC" determination. In response, the Commissioner contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence. (Dkt. No. 20.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a final decision by the Commissioner under 42 U.S.C. § 405 does not determine de novo whether Plaintiff is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court must review the administrative record to determine whether there is "substantial evidence . . . to support the Commissioner's decision," and whether "the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The determination of the Commissioner will be reversed only if the correct legal standards were not applied, or if the

decision was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

"Substantial evidence" is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex re. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal quotations and citations omitted). "To determine [] whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id*. (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). The Commissioner's findings "will be sustained if supported by substantial evidence, even where substantial evidence may [also] support plaintiff's position and despite that the court's independent analysis may differ." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)). In other words, this Court "may not substitute its own judgement for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her

> past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). Plaintiff has the "general burden of proving that he or she has a disability within the meaning of the Act," and "bears the burden of proving his or her case at steps one through four of the [] five-step framework." *Burgess*, 537 F.3d at 128 (internal quotations and citations omitted). At the fifth step, "the burden shift[s] to the Commissioner" to show that there is other work that the plaintiff can perform. *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 445 (2d Cir. 2012). However, if at any point during the five-step analysis "a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. The ALJ Did Not Err in Discounting the Opinion of the Treating Physician

The Social Security Administration enacted new regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her application on June 6, 2017, the new regulations apply to her claim. (T. at 13.)

Under the new regulations, "the Commissioner will no longer give any specific evidentiary weight to medical opinions." *Raymond M. v. Comm'r of Social Security*, 5:19-CV-1313, 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) (citations omitted). Rather, the Commissioner will consider all medical opinions and "evaluate their persuasiveness" based on their "supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id*. (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5)). "Supportability and

consistency are the most important factors" in determining whether a medical opinion is persuasive. 20 C.F.R. § 416.920c(b)(2).

While "the new regulations eliminate the perceived hierarchy of medical sources [and] deference to specific medical opinions . . . the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] finds all of the medical opinions.'" *Brian O. v. Comm'r of Social Security*, 1:19-CV-983, 2020 WL 3077009 at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b)). An ALJ is explicitly required to "explain how [he] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Additionally, the ALJ "must consider, but need not explicitly discuss, the [other] three factors." *Brian O.*, 2020 WL 3011009, at *5 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)); *see also Pamela H. v. Kijakazi*, 5:20-CV-00304, 2021 WL 4307457 at *6 (N.D.N.Y. Sept. 22, 2021) ("The Regulations make clear that the ALJ is *not required* to explain whether and how [he] considered the medical source's treating relationship with a claimant, unless there are equally persuasive medical opinions about the same issue, which is not the case here.").

Dr. Eppolito, Plaintiff's treating physician, completed two medical source statements. (T. at 254-56, 258-60). The ALJ found Dr. Epopolito's medical assessments with disabling physical limitations to be unpersuasive. (T. at 18.)

In the first medical source opinion, dated August 13, 2018, Dr. Eppolito rendered an opinion that due to degenerative disc disease and chronic back pain, Plaintiff had the following limitations: sit 20 minutes at a time and less than 2 hours total in an 8-hour workday; stand/walk 15 minutes at a time and less than 2 hours total in an 8-hour workday; requires a job that allows for shifting positions at will from sitting, standing, and walking; can occasionally lift 10 pounds;

rarely twist, stoop/bend, crouch squat; never climb ladders or stairs; occasionally use her neck; requires unscheduled breaks every hour; would be off task more than 20 percent of the workday due to overall impairments and work-related limitations; would have good and bad days; and would miss work more than four days per month as a result of impairments or treatment. (T. 254-56.) He indicated these limitations had existed and persisted to the same degree since December 1, 2016. (T. 257.)

In the second medical source opinion, dated October 31, 2018, Dr. Eppolito indicated that due to chronic lumbar degenerative disc disease, morbid obesity (BMI 60-69), sleep apnea, and bilateral carpal tunnel syndrome, Plaintiff had "movement, control, or sensation disturbance," and sleep disturbance, and opined the following limitations: sit 20 minutes at one time and less than 2 hours total in an 8-hour workday;[2] stand 10 minutes at a time and less than 2 hours in an 8-hour workday; requires the ability to sit, stand, and move around at will; can rarely lift 20 pounds and occasionally 10 pounds; can never stoop/bend, crouch/squat, climb ladders or stairs; can either never or rarely twist; can rarely use her hands, fingers, or arms for grasping, turning, twisting objections, fine manipulations, or reaching due to CTS; requires additional breaks every hour lasting 15 minutes in duration; would be off task more than 20 percent of the workday due to her overall impairments and limitations; would have good and bad days; and would miss more

[2] The Court notes that regarding the number of "hours and/or minutes" that Plaintiff can sit at "one time," Dr. Eppolito circled both "twenty minutes" and "two hours" and as to the "hours and/or minutes" that Plaintiff can stand for one time, he circled both "ten minutes" and "one hour". (T. at 258.) The parties disagree in their interpretation of these limitations. Plaintiff asserts Dr. Eppolito opined Plaintiff could *only* sit for twenty minutes at one time and stand for ten minutes at one time (Dkt. No. 14 at 12), whereas the Commissioner claims Dr. Eppolito opined Plaintiff could sit for two hours *and* twenty minutes at a time and stand for one hour *and* ten minutes at a time (Dkt. No. 20 at 4).

than four days per month as a result of her impairments or treatment. (T. at 260.) He indicated these limitations had existed since December 1, 2016. (T. at 261.)

*1. Supportability*

Concerning the factor of supportability, the rules explain that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [a] medical opinion . . . the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(1). In the present case, the ALJ found Dr. Eppolito's opinions were "unpersuasive" because "on the assessment documents themselves, Dr. Eppolito did not cite objective medical evidence to support his opinions." (T. at 18.) Plaintiff argues that citing objective medical evidence on the assessment documents "is not required when a doctor provides treatment notes," arguing that "the ALJ cannot reject an opinion based on its form when it is accompanied by significant treatment notes." (Dkt. No. 14 at 4; *Chalk v. Berryhill*, No. 16-CV-6494, 2017 WL 4386811, at *13 (W.D.N.Y. Sept. 29, 2017) (citing *Merritt v. Comm'r of Soc. Sec.*, No. 15-CV-6633-CJS, 2016 WL 6246436, at *8 (W.D.N.Y. Oct. 26, 2016) ("Notwithstanding the lack of narrative on the check-box form, the ALJ was still required to consider the opinion" where "significant treatment notes exist")).) Though Plaintiff is correct that "the form of the opinion does not matter so long as it is supported by treatment notes in the record," here the Court finds the ALJ did not err in concluding that objective medical evidence did not support Dr. Eppolito's opinion. *Id*. at 15.

Plaintiff asserts that Dr. Eppolito's notes contained objective medical evidence to support his opinion, including notations of "pain [with flexion and] extension," "severe[] morbid[] obes[ity] with BMIs in the 60s and 70s," and "discomfort with standing and bending." (*Id*. at

13.) Plaintiff also states that Dr. Eppolito "knew of Plaintiff's imaging," and "was aware of the visits at Regenerative Spine & Musculoskeletal Medicine." (*Id.*)

"Objective medical evidence" is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). By contrast, "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [] impairments, [] medical history, clinical findings, diagnos[es], treatment[s] provided with response, [and] prognos[es]" is considered "other medical evidence." *Id.* § 404.1513(a)(3). Applying these definitions, the only "objective medical evidence" cited in Dr. Eppolito's treatment notes is Plaintiff's BMI/weight and limited range of motion in the lumbar region. Dr. Eppolito did not explain how Plaintiff's weight or range of motion supported his medical opinion. (*See* T. at 254-61.) Dr. Eppolito opined several limitations, but provided no explanation for his opinions either in his assessment document or in Plaintiff's regular treatment notes. (*See* T. at 228-338.) Dr. Eppolito stated on multiple occasions that Plaintiff was in a state of "total disability," but did not provide an explanation for that conclusion. (*See, e.g.*, T. at 228, 231, 233, 236, 243, 319.) Concerning the assertion that Dr. Eppolito "knew of" or "was aware" of evidence collected by other medical sources, there is no indication that Dr. Eppolito relied on that evidence when developing his opinion.[3]

In sum, Dr. Eppolito's treatment notes cited only two forms of objective medical evidence, and did not provide any explanation as to how the Plaintiff's weight and range of motion were relevant or supported his conclusions. Therefore, the ALJ was within his discretion to determine objective medical evidence did not support Dr. Eppolito's opinion.

---

[3] For example, on May 8, 2017, Dr. Eppolito reported that Plaintiff "saw Dr. Melfi" and noted a possible epidural plan, but did not record any response to Dr. Melfi's findings or suggest that evidence from Dr. Melfi influenced his opinion of "total disability." (T. at 236-37.)

*2. Consistency*

Concerning consistency, the regulations state that "the more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). In his determination that Dr. Eppolito's opinions were not persuasive, the ALJ found that "Dr. Eppolito's opinions are not fully consistent with the content of his underlying treatment records." (T. at 18.)

Comparing Dr. Eppolito's opinions with his own treatment records reveals that Dr. Eppolito's recommendations lack the requisite level of consistency. Dr. Eppolito's conclusions are both inconsistent with each other and inconsistent with the medical evidence contained in his own treatment notes. For example, in Dr. Eppolito's initial medical source statement, he listed Plaintiff's diagnosis as "[degenerative] lumbar disc disorder," and listed only one symptom - "chronic back pain." (T. at 254.) Dr. Eppolito listed restrictions on Plaintiff's ability to sit, stand, walk, lift, and carry items, bend, and move her head, but did not provide any objective medical evidence for these determinations. (T. at 254-56.) Notably, in this initial source statement, Dr. Eppolito failed to include any other medical impairments, omitting mention of Plaintiff's morbid obesity, sleep apnea, and bilateral carpal tunnel. *See id*. This initial statement also found that Plaintiff could "frequently" grasp, turn or twist objects with the hands, make fine manipulations with the fingers, and reach her arms overhead. (T. at 255.)

In a second assessment of Plaintiff's abilities, which occurred only two months later, Dr. Eppolito's opinions were markedly different. (*See generally* T. at 259-60.) In this assessment, Plaintiff's diagnoses were listed as "[degenerative] lumbar disc disorder, [morbid] obesity, sleep apnea, and [bilateral] carpal tunnel." (T. at 258.) Regarding Plaintiff's ability to use her hands

and fingers, Dr. Eppolito found on this occasion that Plaintiff could "rarely" grasp, turn or twist objects with her hands, make fine manipulations with her fingers, and reach her arms overhead. (T. at 259.) He noted Plaintiff's carpal tunnel diagnosis in this section of the evaluation, which had been completely omitted on the earlier form. (*See id*. at 254.[4]) There were other differences between Dr. Eppolito's two assessments, including the fact that Plaintiff's only "symptom" on the second opinion was "BMI of 68-69;" side effects of medications were only listed on the second opinion; an ability to "rarely" lift and carry twenty pounds was present in the second opinion; an assessment on the second opinion found that Plaintiff could "never" stoop/bend or crouch/squat; and the second opinion found that Plaintiff could "frequently" look down, turn her head right or left, look up, and hold her head in a static position. (T. at 254-260.) Dr. Eppolito provided no explanation for the improved and worsened abilities. *Id*.[5] Dr. Eppolito had treated Plaintiff one time between the two opinions, where the treatment encounter note indicates only that Plaintiff appeared "healthy and well developed," and the only abnormality documented was limited lumbar range of motion. (T. at 333-34.)

In addition to the inconsistencies between Dr. Eppolito's two medical source statements, his conclusions were also inconsistent with objective medical evidence in his treatment notes. Dr. Eppolito repeatedly concluded that Plaintiff was in a state of "total disability." (T. at 228, 231, 233, 236, 243, 319.) However, treatment records consistently demonstrate that Plaintiff had

---

[4] Plaintiff's carpal tunnel diagnosis predated both of the 2018 evaluations, as it was made in 2004, and had been reported in Dr. Eppolito's other medical notes prior to the source statements. (*See, e.g.*, T. at 227.)

[5] As indicated above, the parties disagree in their interpretation of the Dr. Eppolito's opinions regarding Plaintiff's impairments as to sitting and standing. The Court acknowledges the confusing recommendation, but finds that Dr. Eppolito's opinions can reasonably be deemed "unpersuasive" without relying on this potential error.

normal leg strength, and an "ok" gait and heel toe walk. *See id.* Radiographs of Plaintiff's lumbosacral spine were normal. (T. at 302). Her straight leg raising ("SLR") tests, bilateral Slumps tests, and Lhermitte's signs were also generally negative. (T. at 231, 233, 238, 240, 288, 297, 300, 312, 316, 318, 329, 331, 350.) These unremarkable findings are inconsistent with a conclusion of "total disability."

Dr. Eppolito's opinions are also inconsistent with nonmedical evidence in the record. "Evidence from nonmedical sources is any information or statements from a source, [including the claimant], about any issue." 20 C.F.R. § 404.1513(a)(4). Throughout Dr. Eppolito's treatment notes and Plaintiff's testimony before the ALJ, evidence showed that Plaintiff's chronic back pain was responsive to medication and medical treatment, and that she was able to maintain a reasonable activity level. (T. at 17.) She testified that ibuprofen often relieved her pain and, at physical therapy, she reported her back felt better from transcutaneous electrical nerve stimulation (also known as "TENS"), and described overall improvement on several occasions. (T. at 42, 51, 266, 268, 270, 273, 293, 295, 296).

Dr. Eppolito's treatment notes through August of 2017 reported "no change in status." (T. at 313.) The treatment notes consistently failed to document any response to treatments or medications. When Plaintiff first began physical therapy treatment in June of 2016, she stated that her pain level was at best a "6" and at worst a "6". (T. 264.) Over the following months, Plaintiff reported to her physical therapist that her back "fel[t] better" and that her pain was "not as severe." (T. 266-70.) By the start of 2017, Plaintiff reported to her physical therapist that her pain was at worst a "7," but at best a "0". (T. 282.) Dr. Eppolito's records do not report this seemingly significant change, and the improvement is not consistent with the repeated comment of "no change in status."

Dr. Eppolito's statements of "total disability" are also inconsistent with Plaintiff's statements about her activity level. Plaintiff testified she is capable of driving and completing household tasks such as preparing meals and washing dishes. (T. at 43-52.) Plaintiff also reported she was able to shop, shower, and dress herself. (T. at 248.)

In sum, the Court finds the ALJ properly considered Dr. Eppolito's opinions and substantial evidence supports his conclusions regarding the lack of supportability and consistency of Dr. Eppolito's opinions. Therefore, remand is not warranted on this ground.

**B. The ALJ Did Not Err in Relying on the Consultative Examiner's Opinion**

As noted, under the applicable regulations, an ALJ is required to consider all medical opinions on a Plaintiff's alleged disability and "evaluate the persuasiveness" of each. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). Each opinion is evaluated based on its "supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id*. However, "supportability and consistency are the most important." 20 C.F.R. § 416.920c(b)(2).

Consultative examiner Dr. Ganesh conducted an examination of Plaintiff on July 31, 2017. (T. at 248-51.) Dr. Ganesh reported Plaintiff's medical history, activities of daily living, and completed several tests. *Id*. Dr. Ganesh opined "no limitation with sitting, standing, and walking. Mild to moderate limitation with lifting, carrying, pushing, and pulling." (T. at 251.) She stated that Plaintiff's prognosis was "fair." (T. at 250.) The ALJ found Dr. Ganesh's opinion to be persuasive. (T. at 18.)

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [a] medical opinion . . . the more persuasive that opinion . . . will be." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ found that Dr. Ganesh's opinions were

supported by Plaintiff's largely unremarkable physical examination findings, including Plaintiff's normal gait, good range of motion, ability to rise from a chair without difficulty, lack of neurological deficits, full strength in her extremities and hands, and the fact that Plaintiff used no assistive device. (T. at 18.)

The consultative examiner's report indicates that Dr. Ganesh relied on several forms of objective evidence in developing her opinion, including Plaintiff's weight of 360 pounds, blood pressure, pulse, respiration, range of motion test results, SLR test results, and strength test results. (*See* T. at 248-252.) In addition to this objective medical evidence, Dr. Ganesh explained how Plaintiff's conditions affected her ability to perform tasks. Dr. Ganesh explained that Plaintiff did not need an assistive device, was able to rise from a chair without difficulty, and did not need help changing, but was unable to perform other tests. *See id.*

Concerning consistency, the ALJ found that "Dr. Ganesh's opinion is consistent with and supported by the findings of her complete physical examination." (T. at 18.) "The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). Concerning consistency, the ALJ found that "Dr. Ganesh's opinion is consistent with and supported by the findings of her complete physical examination." (T. at 18.)

In addition to the objective test results discussed above, Dr. Ganesh's opinion reflected an understanding of Plaintiff's statements about her own condition. (*See* T. at 248.) Dr. Ganesh's examination reported Plaintiff's own statements about her pain, how activities affect her pain, and how her pain affects her abilities to perform tasks of daily living. (*See* T. at 248-252.)

Dr. Ganesh's opinion is thus consistent with both the objective findings of her own examination of Plaintiff, and with information from non-medical sources, namely, statements made by the Plaintiff herself. Accordingly, there was substantial evidence for the ALJ's determination that Dr. Ganesh's opinion was persuasive.

Plaintiff also argues that Dr. Ganesh's opinion of "mild-to-moderate limitation with lifting, carrying, pushing, and pulling" was "vague," rendering the ALJ's reliance on it erroneous. (Dkt. No. 14 at 15.) However, a consultative examiner's use of the terms "mild" or "moderate" does not automatically render her opinion too vague to be reliable. *See Jeffrey A. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1473 (CFH), 2020 WL 1234867, at *7-8 (N.D.N.Y. Mar. 13, 2020) (collecting cases); *Josua S. v. Comm'r of Soc. Sec.*, No. 6:19-CV-1434 (ML), 2021 WL 105769, at *7 (N.D.N.Y. Jan. 11, 2021). For example, such an opinion is not impermissibly vague where the conclusions are well supported by an extensive examination. *See, e.g.*, *Waldau v. Astrue*, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012) (finding consultative examiner's findings of "moderate" physical limitations well supported by his findings regarding plaintiff's gait, range of motion in extremities, grip strength, and finger dexterity); *Sweeting v. Colvin*, No. 12-CV-0917 (DNH/CFH), 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *see also Caci v. Comm'r of Soc. Sec.*, No. 6:18-cv-6533, 2020 WL 43512, at *2 (W.D.N.Y. Jan. 2, 2010) (finding terms such as "mild" and "moderate" were not vague where they were supported by examination findings).

In this case, Dr. Ganesh provided several facts to support her opinion, which gave it a "more concrete" meaning. *See Gilbert H.*, 2020 WL 6146596, at *4. To that end, Dr. Ganesh

reported that Plaintiff had a "normal" gait and stance, "used no assistive devices," and was "able to rise from [her] chair without difficulty," but was "obese," and could not "heel toe" or "squat." (T. at 249.) Dr. Ganesh examined Plaintiff's ability to flex and extend her spine, performed SLR tests, and tested Plaintiff's range of motion. (T. at 250.) Dr. Ganesh rated Plaintiff's strength as "5/5" in the upper and lower extremities. *Id*. Dr. Ganesh also reported that Plaintiff could "cook, clean, [] shop, shower, bathe, and dress," evidence that was further supported by other sources. (T. at 248; *see also* T. 44-50.) The ALJ acknowledged these facts, stating that Dr. Ganesh's opinion was "consistent with and supported by the findings from her complete physical examination of [Plaintiff]." (T. at 18.) Specifically, the ALJ noted that Dr. Ganesh's examination findings were "largely unremarkable: the [Plaintiff] had a normal gait, used no assistive device, was able to rise from a chair without difficulty, maintained good range of motion, exhibited no neurological deficits, and had full strength in her extremities and her hands." *Id*. Thus, Dr. Ganesh's examination report, in its entirety, provides support for the ALJ's RFC finding that Plaintiff could perform sedentary work, the least physically demanding of the work categories. (*See* T. at 16-18 (finding there is nothing in Dr. Ganesh's description of the claimant's limitations that would prevent sedentary work").) As such, remand is not warranted on this ground.

**C. The ALJ's RFC Determination is Supported by Substantial Evidence**

"Residual functional capacity is the most [a person] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC assessment will be "based on all of the relevant medical and other evidence." *Id*. § 404.1545(a)(3). When determining an RFC, an ALJ will "consider [a person's] ability to meet the physical, mental, sensory, and other requirements of work." *Id*. at § 404.1545(a)(4). "An ALJ's findings must specify the functions plaintiff is

capable of performing." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (quoting *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)). "The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence." *Brian Z. v. Comm'r of Soc. Sec.*, 5:20-CV-737, 2021 WL 3552525, at *4 (N.D.N.Y. Aug. 11, 2021) (citing *Natashia R. v. Berryhill*, No. 3:17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019)). "In deciding a disability claim, an ALJ is tasked with 'weighing all of the evidence available to make an RFC finding that is consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources." *Tanya S. v. Saul*, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

"Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The Second Circuit has stated that "sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing 20 C.F.R. § 404.1567(a)). It is true that "the concept of sedentary work contemplates substantial sitting [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). However, "the regulations do not mandate that all sedentary jobs . . . require the worker to sit without moving for six hours," as the Second Circuit has explained, "no such counterintuitive presumption exists." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Here, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*See* Dkt. No. 14 at 16.) Specifically, Plaintiff claims that "the ALJ had no basis for

this RFC," and "offers no explanation as to why [] limitations for sitting and standing would not apply to a 300-to-400-pound person." *Id*. Contrary to Plaintiff's assertion, the ALJ did provide a basis for the RFC determination. Specifically, the ALJ stated that "the record shows that [Plaintiff] has generally participated in a very conservative course of treatment, such as physical therapy [and] . . . only . . . uses [] ibuprofen . . . [which] does reduce her back pain." (T. at 17.) The ALJ further explained that Plaintiff "maintains a reasonable activity level," and engages in activities that "are consistent with sedentary exertion." *Id*.

Turning to Plaintiff's contention that the ALJ offered "no explanation" for why limitations on sitting and standing would not apply to a person of Plaintiff's weight, the Court notes Dr. Ganesh found "no limitation with sitting, standing, and walking." (T at 251.) The ALJ accepted Dr. Ganesh's opinion, finding it "persuasive." (T. at 18.) The ALJ explained that "there is nothing in Dr. Ganesh's description of [Plaintiff's] limitations that would prevent sedentary work." *Id*. Further, the ALJ addressed Plaintiff's weight, stating that "the record shows that despite her obesity, [Plaintiff] maintains a reasonable activity level, has a normal gait, and uses no assistive device" supporting the finding that Plaintiff was "limited, but not disabled by obesity." *Id*. Therefore, the Court finds substantial evidence supports the ALJ's RFC and remand is not warranted on this ground.

## IV. CONCLUSION

In light of the foregoing, the Court finds substantial evidence supports the ALJ's decision.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**.

Dated: December 1, 2021
Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge